Johnson v. Winston.

---

HANNAH JOHNSON V. J. S. WINSTON ET AL.

FILED APRIL 9, 1903. No. 12,198.

1. Tender of Proof: PRELIMINARY QUESTION. An offer of proof in support of a preliminary question, need not be confined to the same limits as the answer, but may extend farther *in medias res,* provided both relate to the same subject matter.

2. Expert Witness: PRELIMINARY QUESTION. In an action for malpractice in amputating part of plaintiff's hand and removing the metacarpal bone, it is proper to ask a professional witness for plaintiff, as a preliminary question, whether there is any method of cure without removing the bone.

3. ——: ——. In such action, a surgeon of thirty-five years' experience, who has inspected the amputated bone, may be asked to examine plaintiff's hand and state what ligaments would need to be severed in the operation, without a preliminary showing that the question can be answered from such inspection.

4. Action for Malpractice: INSTRUCTION. A charge in such an action

that defendants are not liable for the consequences of the opera-
tion if they acted "in a careful and skillful manner under the
belief that it was proper," is too broad; the belief must have been
one acquired in the exercise of due professional care and skill.

ERROR to the district court for Fillmore county: GEORGE
W. STUBBS, DISTRICT JUDGE. *Reversed.*

*F. B. Donisthorpe,* for plaintiff in error.

*S. W. Christy, Charles H. Sloan* and *F. W. Sloan, contra.*

LOBINGIER, C.

This is an action for malpractice, alleged to consist in
the negligent anl unskillful amputation of plaintiff's index
finger and metacarpal bone, the removal of the latter hav-
ing been, it is claimed, wholly unnecessary. Plaintiff also
alleges that she "has suffered immeasurable pain, torment
and anxiety of mind," and "has by reason of the premises
wholly lost the use of said hand, wrist and arm." Defend-
ants filed separate answers, alleging, in substance, that the
operation was performed in a proper and professional man-
ner, and that the condition of plaintiff's hand was due to
lack of care on her part after defendants had been dis-
charged. There was a verdict for defendants, and plain-
tiff brings this proceeding to reverse the judgment. A
large number of errors are assigned, and exhaustive briefs
are presented on both sides, but we find it unnecessary to
discuss more than two of the questions raised.

Plaintiff called as a witness one Dr. Mozee, a regular
physician and surgeon of thirty-five years' practice, who
was asked to examine the metacarpal bone, which had been
preserved after its amputation from plaintiff's hand.
After testifying that "the head of the bone is necrosed,"
the examination of the witness proceeded as follows:

"Q. 1399. What would be the treatment by your school
of those two spots of necrosis?

"Defendants object as incompetent, immaterial, as to

what the treatment would be of his school for those spots. Objection sustained.   Exception.

"Q. 1400.  State if there would be any remedy that could be used to cure the necrosis you have now spoken of, without the removal of the bone.

"Defendants object as incompetent, immaterial, irrelevant under the issues, leading.   Objection sustained.   Exception.

"Plaintiff offers to prove by the witness on the stand that the necrosis spoken of by said witness on the head of the metacarpal bone now in his hand, could have been removed and cured by scraping, or by the chiseling process known to the profession, without the removal of the metacarpal bone.

"Defendants object as incompetent, no foundation laid for the hypothesis, immaterial, irrelevant under the testimony so far taken.   Objection sustained, and offer denied. Plaintiff excepts.

"Q. 1401.  Please examine the hand of the plaintiff, and state what ligaments would have to be severed from the amputated bone you have just examined, and the scar you find on the hand, in the amputation and removal of that bone.

"Defendants object as no proper foundation laid, incompetent, immaterial.   Objection sustained.   Plaintiff excepts.

"Plaintiff offers to prove by the witness on the stand that in the removal of the metacarpal bone now in the hands of the witness, from an examination of the scar on the hand of the plaintiff, that the annular, palmar, and one of the main branches of the posterior annular ligaments would have to be severed, and that in the severing of said ligaments stiffness of the wrist would be caused.

"Defendants object, incompetent, immaterial, no proper foundation laid, and the offer not within the scope of the question propounded.   Objection sustained."

This ended plaintiff's attempt to produce evidence of this character, and the above rulings are assigned in the peti-

tion in error. Defendants contend that it was improper to ask the witness if there was "any remedy" for necrosis without removing the bone, and that he should have been asked merely for the ordinary treatment. But the court had already refused to permit the witness to state what would be the treatment of his school, which was the regular or allopathic. And, as this was substantially the same question that counsel now contend was the proper one, plaintiff was necessarily driven to a different form of interrogatory. Moreover, the inquiry whether there was "any remedy" was merely preliminary, intended to show the knowledge of the witness, and to afford a basis, as the offer subsequently disclosed, for a question as to the proper remedy. Where the question is one of this character, more latitude should be allowed in its form. An attorney may not always know exactly what his witness will testify to, and where he is merely laying the foundation leading up to other evidence, it would often result in great injustice to confine the question to the same limits as if the examination had proceeded well into the subject.

Defendants also objected to the offer in support of question 1400, that it "was broader than the question," but as we read the offer it is narrower than the question. The latter was the inquiry as to "any remedy," while the offer was an inquiry as to a particular remedy or form of surgical treatment. The case of *Keens v. Robertson,* 46 Neb. 837, lends no support to defendants' objection. The question there was as to the building, while the offer related to the contents. Each pertained to a different subject. Here both offer and question relate to the same general subject-matter of remedies for necrosis. And if plaintiff could have proved, as he offered to do, that this disease could have been cured without the removal of the bone by a remedy "known to the profession," it would seem that defendants might easily have protected themselves by showing on cross-examination that the suggested remedy was "heroic or extraordinary," if such was the case. Certainly nothing was implied by the form of the question.

"Known to the profession" must be understood as being known to the whole profession, not merely to a part, or the most learned members of it.

The ruling on question 1401 is sought to be sustained on the ground that it "assumed that a surgeon could, from an inspection of the healed portion of the remaining hand and the scars thereon, determine what ligaments had been severed in the amputation." The question, however, was "what ligaments would have to be severed," not what ones had been. It would not seem to be necessary to prove that a surgeon of thirty-five years' experience could tell what ligaments would need to be severed in the amputation of the metacarpal bone, when he had already examined the latter, and was at the time examining the remaining part of the hand.

The offer in support of question 1401 is likewise objected to as not within the scope of the question. But here again the question was preliminary, and in such case the offer is not confined to the same limits as the answer would be. *Union P. R. Co. v. Stanwood,* 91 N. W. (Neb.) 191; *Hanson v. Township of Red Rock,* 7 S. Dak. 38, 40.

The materiality and importance to plaintiff of the evidence which her counsel thus vainly sought to place before the jury can best be understood in the light of defendants' theory of the case as elaborated in their brief. They contend that "the burden rests upon the plaintiff throughout the trial of the case, to prove: First, that the amputation was unauthorized and unnecessary, or that the surgical operation was performed in a negligent and unskillful manner; second, that damages resulted to the plaintiff directly traceable to such negligent malpractice." They further claim: "No physician or surgeon or other competent witness has testified that the same were negligent, unskillful or not the proper and ordinary treatment under the circumstances so testified to. This omission would, of itself, be fatal to plaintiff's recovery, even if no testimony had been offered in behalf of the defendants. * * * No competent professional witness has testified that the

present condition of the plaintiff's hand is the result of the surgical operation or treatment by the defendants. This omission is fatal to the right to recover." Now it was exactly this burden and these essentials which plaintiff was apparently attempting to meet by offering the testimony of Dr. Mozee. It can not be said, therefore, that the exclusion of this evidence was without prejudice. As is shown by defendants' counsel themselves, the evidence was vital to plaintiff's case, and, unless the grounds for its rejection were proper, the judgment ought not to stand.

Moreover, this appears to have been the only witness in behalf of the plaintiff on this point, and, if so, it was all the more important that no mistake should have been made in excluding his testimony. We can not overlook the well known fact that in actions of this kind it is always difficult to obtain professional testimony at all. It will not do to lay down the rule that only professional witnesses can be heard on questions of this character, and then, in spite of the fact that they are often unwilling, apply the rules of evidence with such stringency that their testimony can not be obtained against one of their own members.

It seems to us, therefore, that the evidence thus tendered by plaintiff should have been allowed to go to the jury. It certainly was material, and we can not presume that, had it been admitted, the result would have been the same.

In the ninth instruction the trial court charged the jury that "Although a diseased condition resulting in a malformed and useless hand was caused by the operation, the defendants are not liable if they performed the operation with the wife's consent, express or implied, in a careful and skillful manner, under the belief that it was proper to be performed." My associates are of the opinion that the rule here is stated too broadly, and that the "belief" which would excuse defendants from the consequences of an operation must have been a well founded belief acquired in the exercise of due professional care and skill. The authorities appear to lend support to this view. Thus in

*West v. Martin,* 31 Mo. 375, a request for the following instruction was held to be rightly refused: "If the defendant is a surgeon of ordinary skill, he is not responsible in this case for an error of judgment." The court said further (p. 378): "Whether errors of judgment will or will not make a surgeon liable in a given case depends not merely upon the fact that he may be ordinarily skillful as such, but whether he has treated the case skillfully or has exercised in its treatment such reasonable skill and diligence as is ordinarily exercised in his profession. For there may be responsibility where there is no neglect, if the error of judgment be so gross as to be inconsistent with the use of that degree of skill that it is the duty of every surgeon to bring to the treatment of a case according to the standard indicated."

So in *Du Bois v. Decker,* 130 N. Y. 325, 330, the court say of the surgeon: "His judgment must be founded upon his intelligence. He engages to bring to the treatment of his patient care, skill and knowledge, and he should have known the probable consequences that would follow from the crushing of the bones and tissues of the foot."

The other errors assigned are either, in our judgment, not well taken, or are not likely to occur on a retrial of the case. We recommend that the judgment be reversed and the cause remanded for further proceedings.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.