No. 84-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

KATHLEEN AASHEIM,

        Plaintiff and Appellant,

-vs-

FRANK W. HUMBERGER,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District
In and for the County of Gallatin,
The Honorable ~~Joseph B. Gary,~~ Judge presiding.
Thomas Olsen

COUNSEL OF RECORD:

    For Appellant:

        Anderson, Edwards & Molloy; A. Clifford Edwards,
        Billings, Montana

    For Respondent:

        Berg, Coil, Stokes & Tollefsen; Don M. Hayes,
        Bozeman, Montana

_____

Submitted on Briefs:  Dec. 27, 1984

Decided: February 21, 1985

Filed: FEB 21 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Kathleen Aasheim, plaintiff in a medical malpractice action, appeals from a judgment entered by the District Court of the Eighteenth Judicial District in favor of defendant, Dr. Frank W. Humberger.

Plaintiff brought this action to recover damages for alleged negligent medical treatment administered to her by defendant. A jury trial which began January 30, 1984 concluded with an eight to four defense verdict. Notice of entry of judgment was filed and sent to the parties on February 6, 1984.

On May 15, 1979, July 26, 1979, August 16, 1979 and September 12, 1979 Kathy Aasheim consulted Dr. Humberger, a national board certified orthopedic surgeon, regarding problems with her left knee. Without ordering diagnostic x-ray films of Ms. Aasheim's knee during either of the four office examinations, Dr. Humberger diagnosed and treated Ms. Aasheim's condition as chondromalacia. When her condition did not improve with the treatment Dr. Humberger referred Ms. Aasheim to Dr. Todd Taylor Grant, in Santa Monica, California, for arthoroscopic surgery. Preoperative x-ray films taken September 26, 1979 revealed a giant cell tumor in plaintiff's left knee joint. Dr. Grant performed an en bloc resection on October 16, 1979. The resection surgery entailed removal of the tumor and all infected bone and soft tissue, which comprised the plaintiff's entire knee area. A prosthetic knee device was implanted.

Plaintiff initiated this action alleging that Dr. Humberger's failure to order diagnostic films in May or July of 1979, resulted in her losing a chance to have less radical surgery and preserve her natural knee. It is plaintiff's

2

contention that if defendant had discovered the giant cell tumor with films taken in May or July of 1979, it is reasonably probable that her knee would have been saved.

Two issues are presented to this Court on appeal:

1. Whether the District Court committed reversible error by improperly instructing the jury on the "locality rule" as the appropriate standard of care.

2. Whether the District Court improperly refused an instruction on the doctrine of "loss of a chance."

In establishing that the standard of care has been breached in a malpractice action, it is a matter of law for the court to determine the proper standard of care applicable to the case and instruct the jury on that standard. The trial judge instructed the jury on the standard of medical care in the following instruction:

### INSTRUCTION NO. 8

"By undertaking professional service to a patient a physician and surgeon represents that he has the necessary degree of skill and learning to do so. That degree of skill and learning is generally measured by the skill and learning possessed by other physicians and surgeons in good standing practicing in similar localities under similar circumstances.

"It is his further duty to use that skill and learning as ordinarily used in like cases by reputable members of his profession practicing in similar localities and under similar circumstances and to be diligent and use his best judgment and learning in an effort to accomplish the purpose for which he is employed.

"The violation of any of these duties is a form of negligence.

"If you should find that the defendant failed to carry out any one or more of these duties and such failure was the proximate cause of the injury to which the plaintiff complains, then your verdict must be for the plaintiff.

"The way in which you may decide whether the defendant possessed and used the knowledge and skill and care which the law demands of him is from evidence

3

presented in this trial by doctors called as expert witnesses."

In giving this instruction the trial court relied upon our holding in Tall Bull v. Whitney (1977), 172 Mont. 326, 564 P.2d 162.

In Tall Bull this Court expanded the "locality rule" from requiring that medical testimony be based upon the standard found in the defendant's community to a standard for the "same or similar localities." The expansion of the rule found its support in public policy articulated by Justice Haswell:

> "Initially we observe that the foundation of the 'same locality' rule no longer exists . . . Today the accessibility of medical literature; the frequency and availability of national, regional, and state medical meetings; advances in communication of medical knowledge; and transportation advances, to name a few, no longer isolate the physician in a rural community in Montana from the opportunities and resources of physicians practicing in the same medical community in the more populous regions of this state."

Although the case at bar involves judging the conduct of a board certified orthopedic surgeon, the trial court imposed the "same or similar" locality rule. We find that the trial court's instruction was unduly restrictive and constituted reversible error.

The Supreme Court of Nevada discussed abrogation of the locality rule when applied to specialists in Orcutt v. Miller (1979), 595 P.2d 1191:

> "In this age of ubiquitous national communication networks and increasing standardization of medical training, the underpinnings of the locality rule are extremely doubtful. Board certified specialists should be held to national standards of the specialty."

Plaintiff offered her proposed instruction no. 5 which, in relevant part, provides as follows:

> "By undertaking professional services to a patient, a doctor represents that he has the necessary degree of skill and learning to do so. That degree

4

of skill and learning is generally measured by the skill and learning possessed by other doctors in good standing practicing in the same specialty and who hold the same national board certification. In this case, Defendant is required to perform to the standards of orthopedics.

"It is the doctor's further duty to use that skill and learning as ordinarily used in like cases by other doctors practicing in that same specialty and who hold the same national board certification.

"The violation of any of these duties is negligence."

Board certified specialists receive comparable training and pass the same national board certification examination. The locality rule bears no rational relationship to standards relevant for judging specialists so certified. The locality rule was an outgrowth of disparity in the quality of community medical practice. To the credit of the medical profession, including its excellent training and certification program, the disparity has largely been eliminated. When the reason for a rule ceases to exist, courts should not hesitate to develop new legal principles more appropriate for the solution of modern problems.

Plaintiff's proposed instruction no. 5 would have been an acceptable instruction for the trial court to give in this case. However, we would suggest that the sentence, "In this case, Defendant is required to perform to the standards of orthopedics" is surplusage, confusing, and should be omitted. The balance of the instruction is approved and failure to give the instruction constituted reversible error.

The issue regarding failure of the trial court to instruct on "loss of chance" will arise upon retrial. Therefore, we examine the issues of causation including the legal doctrine of "loss of chance."

First the court gave the "legal cause" instruction. However, instead of instructing on "loss of chance" in Instruction No. 14, the trial court told the jury:

"In this case, the plaintiff is not required to prove for certain that defendant's negligence, if any, prevented her from receiving proper medical care. Medicine is not an exact science. Plaintiff is required only to show that negligence on the part of the defendant deprived her of a reasonable medical probability of obtaining a better result."

This instruction is not a "loss of chance" instruction. Under the instruction given plaintiff would be required to prove, by a probability, that had early diagnosis and treatment been made plaintiff would have obtained a better result. In other words, plaintiff would have to establish that there was better than a 50/50 chance of obtaining a better result.

Plaintiff sought to recover damages for "loss of chance." Restatement (Second) of Torts § 323 (1965), reads:

"One who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, . . ."

This section of the Restatement has been the subject of much discussion by appellate courts. A number of jurisdictions have held that where the defendant's conduct increased the risk of injury or death by decreasing chances for successful treatment there was a sufficient basis for allowing the case to go to the jury on the issue of causation irrespective of whether the "medical probability" test was satisfied. See Herskovits v. Group Health Co-op (1983), 99 Wa.2d 609, 664 P.2d 474; McBride v. United States (9th Cir. 1972), 462 F.2d 72; Hamil v. Bashline (1978), 481 Pa.256, 392 A.2d 1280; Kallenberg v. Beth Israel Hosp. (1974), 45 A.D.2d 177, 357 N.Y.S.2d 508; Jeanes v. Milner (8th Cir. 1970), 428 F.2d

6

598; Hicks v. United States (4th Cir. 1966), 368 F.2d 626. Some jurisdictions have rejected this approach, generally holding unless the plaintiff is able to show that it was more likely than not that the harm was caused by the defendant's negligence, proof of a decreased chance of cure or survival was not enough to take the causation question to the jury. Cooper v. Sisters of Charity of Cincinnati, Inc. (1971), 27 Ohio St.2d 242, 272 N.E.2d 97; Hiser v. Randolph (Ct. App. 1980), 126 Ariz. 608, 617 P.2d 774; Hanselmann v. McCardle (1980), 275 S.C. 46, 267 S.E.2d 531; Cornfeldt v. Tongen (Minn. 1980), 295 N.W.2d 638.

A detailed discussion of the issues surrounding "loss of chance" can be found in the recent Washington case of Herskovits v. Group Health Co-op, supra. Summary judgment for the defendant was reversed and the case was remanded for trial.

In Herskovits plaintiff's testimony was that plaintiff's decedent's chances for survival had been reduced from 39 percent to 25 percent where decedent's cancer was delayed in diagnosis due to the negligence of the physician who failed to make the original cancer determination. The Washington Court emphasized that the "loss of chance" test should be employed in connection with a "legal cause" instruction to assure that defendant's negligence was a substantial factor in producing the "loss of chance." A special concurring opinion in Herskovits referred to the excellent law review article entitled King, Causation, Valuation, and Chance in Personal Injury Torts Involving Pre-existing Conditions and Future Consequences, 90 Yale L.J. 1353 (1981). The author stated:

> "Causation has for the most part been treated as an all-or-nothing proposition. Either a loss was caused by the defendant or it was not . . . A

7

plaintiff ordinarily should be required to prove by the applicable standard of proof that the defendant caused the loss in question. What caused the loss, however, should be a separate question from what the nature and extent of the loss are. This distinction seems to have eluded the courts, with the result that lost chances in many respects are compensated either as certainties or not at all.

"To illustrate, consider the case in which a doctor negligently fails to diagnose a patient's cancerous condition until it has become inoperable. Assume further that even with a timely diagnosis the patient would have had only a 30% chance of recovering from the disease and surviving over the long term. There are two ways of handling such a case. Under the traditional approach, this loss of not-better-than-even chance of recovering from the cancer would not be compensable because it did not appear more likely [than] not that the patient would have survived with proper care. Recoverable damages, if any, would depend on the extent to which it appeared that cancer killed the patient sooner than it would have with timely diagnosis and treatment, and on the extent to which the delay in diagnosis aggravated the patient's condition, such as by causing additional pain. A more rational approach, however, would allow recovery for the loss of the chance of cure even though the chance was not better than even. The probability of long-term survival would be reflected in the amount of damages awarded for the loss of the chance. While the plaintiff here could not prove by a preponderance of the evidence that he was denied a cure by the defendant's negligence, he could show by a preponderance that he was deprived of a 30% chance of cure." 90 Yale L.J. at 1363-64.

We feel that including "loss of chance" within causality recognizes the realities inherent in medical negligence litigation. People who seek medical treatment are diseased or injured. Failure to diagnose or properly treat denies the opportunity to recover. Including this lost opportunity within the causality embrace gives recognition to a real loss consequence of medical failure.

We hold that under the facts of this case plaintiff is entitled to a "loss of chance" instruction. That instruction may in substance, reflect the substantive law found in Restatement (Second) of Torts § 323, supra. The trier of fact should determine whether defendant's negligence was a sub-

8

stantial factor in reducing plaintiff's chances of obtaining a better result.

The judgment of the trial court is vacated and the cause is remanded for a new trial consistent with the opinions herein expressed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice L. C. Gulbrandson deems himself disqualified and did not participate in this decision.