CIRCUIT COURT FOR MULTNOMAH COUNTY, NOVEMBER TERM, 1869.

## LYMAN WILLIAMS *v.* EDGAR POPPLETON.

MALPRACTICE.—PLEADING.—In a civil action for alleged malpractice, when the character of the wound is stated in the answer, and the statement is not disputed by the replication, the plaintiff will not be permitted to prove that the wound was not of the character alleged in the answer.

EXPERTS.—TECHNICAL WORDS.—The opinion of an expert may be taken upon the meaning of technical words used in a pleading, but not on the construction of the pleading.

REPUTATION.—The defendant should not be allowed to prove what is his *reputation* for skill in his profession.

OPINION.—Nor is the opinion of another physician to be taken as to whether the defendant is a skillful surgeon, but the witness may state facts within his knowledge as to the defendant's skill.

RES GESTA.—A consultation held on occasion of the alleged improper treatment, is to be treated as a part of the *res gesta*, and may be given in evidence.

CONSULTATIONS.—Consultations on other occasions are not admissible.

SYSTEMS OF PRACTICE.—If the treatment is in accordance with a recognized system of surgery, it is not for the court or jury to undertake to determine whether that system is the best, nor to decide questions of surgical science upon which surgeons differ among themselves.

IDEM.—It is sufficient if the practitioner follow a known and recognized system.

JUDGMENT OF SURGEON.—When a skillful and careful surgeon exercises his best judgment in a case of doubt, he can not be held responsible for a want of success.

CONSIDERATION.—The release of a doubtful claim is a sufficient consideraton to uphold a counter-release of a claim for damages.

IDEM.—Parol evidence may explain a writing as to the consideration expressed therein, and the actual consideration may be proved.

MISTAKE IN A RECEIPT.—When a settlement has taken place and written receipts have been given, if an item has been omitted by mistake, the mistake may be proved by parol; but if the item was thought of at the time by both parties, or by the party who objects to the settlement, a receipt in full must be held to include the item.

NEW TRIAL.—CONFLICTING EVIDENCE.—Where there was some evidence tend-
ing to show the damages to be the amount found, the court refused to
set aside the verdict and grant a new trial.

VERDICT.—ACCEPTING JUROR.—Where both parties voluntarily accept a juror
who declares that he has formed a decided opinion on the merits of the
case, the party asking to set aside the verdict for insufficiency of
evidence, should present a clear case.

RECEIPT. EXPLAINED BY PAROL.—Parol evidence of the surrounding circum-
stances is admissible to show that a particular cause of action is not
included in a general receipt.

THIS is an action for malpractice. The complaint charged
negligence and want of care and skill, on the part of the de-
fendant as a physician and surgeon, in the treatment of the
plaintiff, for an injury the plaintiff had received at his ankle
joint. The plaintiff claimed $20,000 damages.

The answer denied negligence, want of skill and care, and
alleged that defendant treated the plaintiff for the alleged
injury with care, skill and diligence.

The answer alleged that when the defendant undertook
the treatment, the plaintiff was suffering from "an almost
fatal injury; that plaintiff's leg had received a wound known
in surgery as a compound, comminuted, complicated frac-
ture of [at] the ankle joint, the joint being completely dis-
located, the ligaments and tendons torn and separated, and
the bone badly crushed, attended with all the secondary
symptoms which usually result from such an injury." (a)

The answer also alleges that "on the twenty-fifth of Feb-
ruary, 1869, said plaintiff and said defendant had a full ad-
justment and settlement of all claims and demands between
them, and the said defendant then and there released to the
said plaintiff all claims and demands, including a demand
for professional services as physician and surgeon done and
performed for plaintiff and his family before that time, and
then justly due and owing from plaintiff to defendant,
amounting to a large sum, to wit: $200, for, and in full
satisfaction and discharge of, all demands of the plaintiff

---

(a) This description of the injury is copied literally from a complaint sworn and filed by
this plaintiff, Williams, in an action which he had previously brought against one East to
recover damages for occasioning the fracture of his limb. It is, probably, for this reason
that the replication is silent on the subject. The limb having been amputated above the
knee, and the foot dissected, it is now said, that if there was any fracture it was but a
slight comminution.

against the defendant, including all damages in the complaint mentioned, and which said release of this defendant, he, the said plaintiff, then and there accepted and received, of and from this defendant, in full satisfaction and discharge of all demand, against this defendant, including all damages in the complaint alleged, and thereupon released the same."

The replication denies all the defendant's allegations in regard to a settlement and release.

*Caples & Moreland*, for the plaintiff.

*Mitchell, Dolph & Smith*, for the defendant.

At the preceding term the jury failed to agree, and the case is now brought on for re-trial.

The evidence shows that plaintiff was injured at the ankle joint by being thrown from a wagon; and that the defendant and Dr. Chapman were called to the case soon after the injury, and after reducing the dislocation and adjusting the parts, the limb was dressed, being supported by roller bandages, with a splint at the bottom of the foot, and a splint adjusted to the inner side of the limb. The limb was then placed by the two surgeons in a fracture box extemporized for the occasion.

The two surgeons visited the patient on the following day, after which the defendant alone treated the case.

The defendant testified that at a visit made three days after the accident, he found that the limb was much swollen, with evident signs of threatened mortification over the internal *maliolis*, the feel being doughy and the limb in a state of extreme congestion. At this visit the defendant took off the splint, relieved the limb from pressure, and placed it upon a support, made by inverting an ordinary deal box about 20 x 10 x 7 inches in its dimensions. The upper surface of the inverted box being so cut as to form a hollow or groove, to receive the leg and permit the heel to rest without pressure; the bottom of the foot being supported against a board fastened to, and projecting above the box. There was much conflicting evidence as to the manner of fastening the piece of board to the box. Similar supports were sub-

stituted frequently during the treatment. The limb was eventually amputated above the knee after the defendant had ceased to treat the case. At the time of the amputation, which was some five or six months after the accident, the wound was not healed and the bones at the point of injury were in a diseased state. The foot had taken permanently, a prone position, and the *tibia* and *fibula* at their inferior extremities had become much diseased, affected with *cares*, and somewhat wasted.

The treatment most complained of, was the manner of supporting the limb. The propriety of removing the supports, and allowing the limb to be without splints or fracture-box, on the third day from the accident, was also attacked; but the course pursued on the third day was sustained, by the opinions of the surgeons who testified, as correct practice under the circumstances.

The defendant offered in evidence a receipt given him by the plaintiff, purporting to be in full of all demands.

In the course of the trial the following rulings were made and the rulings excepted to :

The plaintiff offered to prove that the wound was only a dislocation.

The defendant objected that the character of the wound is admitted by the pleadings, and that at least a compound fracture is admitted.

The objection was sustained.

The plaintiff asked a medical expert : "Is there any such thing known in surgery as a fracture of an ankle joint?"

The defendant objected that, if this is more than verbal criticism, the question calls for the opinion of the witness upon the construction of the pleadings. The objection was sustained.

The plaintiff also asked : "Is there any such injury known in surgery as that described in the answer?" .

The defendant objected as before, and on the ground that the replication admits that the injury in this case is the same that is described in the answer.

*Held:* That, although it is competent to take the opinion of experts upon the meaning of any of the technical terms

used in the pleadings, for the information of the court, yet the question in its present form is inadmissible.

A medical witness stated that he had been acquainted with defendant and with his practice as a surgeon for several years. He was asked by the defendant: "What is defendant's reputation for skill in his profession?" This was objected to as incompetent, and the objection was sustained.

The defendant asked: "What do you know of your own knowledge of his skill?"

The plaintiff objected, that the question calls for the opinion of the witness on facts that are not disclosed to the jury. The court admitted the question, but informed the witness that he was not to state, in reply, matters of opinion.

The witness testified that he had been associated with defendant in difficult surgical cases; and he was asked by the defendant to state any facts within his knowledge going to show whether or not defendant was a skillful surgeon.

The same objection was made and overruled; and the witness described several surgical cases in which he had seen the defendant operate, and testified that the defendant performed each of the operations skillfully.

The defendant being a witness, his counsel asked: "When you and Dr. Chapman made your first visit and were in consultation upon the case, what was said or advised by yourself and Dr. Chapman in the course of the consultation in regard to the proper mode of treating the case?"

The plaintiff objected to the question as irrelevant and incompetent.

*By the court:* "If the plaintiff claims that the treatment on that occasion was improper, I think the consultation may be treated as of the *res gesta,* and what was advised may be given in evidence."

The plaintiff disclaimed objection to the treatment on that occasion, and the objection was sustained. (b)

(b) The evidence is too voluminous to be inserted. Many medical witnessses were examined at length, upon modes of treatment, causes of *anchilosis* and on other subjects, and there was much conflicting testimony of other witnesses as to the mode of supporting the limb resorted to. The dissected bones of the amputated limb had been exhibited to the jury on the former trial, and had been examined by some of the experts before testifying, but the bones were not exhibited to the jury at the present trial.

UPTON, J. instructed the jury as follows:

*Gentlemen of the Jury:* In this case I am required to reduce the charge to writing, and will proceed to read to you such instructions as to the law, as seem necessary to a proper determination of the case.

It is a rule of law that any material fact stated in the complaint and not denied in the answer is admitted by the defendant, and any such fact stated in the answer and not denied by the replication is admitted by the plaintiff to be true. In regard to facts so admitted in the pleadings, neither party is at liberty on the trial to gainsay or contradict.

It is the duty of the court in this, as in all cases, to construe the pleadings and to determine what the issues are, or in other words, what is admitted and what is in dispute between the parties.

In this case what is said about the name, nature and character of the injury is not denied, and is therefore to be taken as true. It is, consequently, admitted in this case, both by the plaintiff and defendant, that the injury which the defendant was called upon to treat was of the kind which the answer declares it to be.

It is important that you understand clearly what is complained of by the plaintiff, and what is set up as a defense, in order that you may confine your deliberations to the points involved, and apply the evidence to questions that are in controversy.

The plaintiff complains that the defendant failed to treat the plaintiff in a skillful and proper manner for the injuries he had received; that the defendant, through ignorance or neglect, failed to furnish proper support to the foot of plaintiff, so that the bones of the ankle and leg could or would unite, and that the defendant improperly removed the support that had been placed under, and to, plaintiff's foot to keep the same in position.

The defendant, by his answer, denies the alleged neglect, sets up a description of the injury, avers that he treated the case with care and skill, and as an additional defense sets up that he has been released.

It is important to ascertain and have in mind correct rules in regard to the duties and obligations of surgeons when employed professionally.

In cases like this the court and jury do not undertake to determine what is the best mode of treatment, or to decide questions of medical science upon which surgeons differ among themselves.

If the treatment is according to a recognized system of surgery, it is not for the court or jury to undertake to determine whether that system is the best among the many that may be adopted by different branches of the medical profession. It is sufficient if the practitioner follow any of the known and recognized systems.

A physician or surgeon is never considered to have warranted a cure unless it is expressly proved that he contracted to warrant a cure.

And he cannot be held responsible for mere want of success. There must also be a want of ordinary care, or of ordinary skill, or a failure to exercise his best judgment.

By ordinary skill is meant such skill as men in the same profession usually possess. It would be contrary to reason to hold that every professional man is bound to possess remarkable or unusual talent. In order to hold the defendant liable in damages it must be satisfactorily shown by the evidence, not only that he failed to treat the case properly, but also that the damage which the plaintiff complains of is attributable either to unskillful or negligent treatment.

The learned professions, like other avocations, are open to every person who sees proper to prepare himself to pursue them as an avocation.

When a young man sees fit to enter his name as a student of medicine and surgery, there is no rule requiring that he should be possessed of uncommon talent. It is a profession upon which every youth of common ability may enter as a student with a view to make it the business of his life, and it is not the intention of the law, nor would it be consistent with human reason to require that every aspirant for professional honors should bring to the labor remarkable and

uncommon natural aptitude. The education and choice of profession or occupation of most individuals is to a great extent influenced and directed by parents or others who have their care in childhood, and make the choice or give the impressions and bias that lead to the particular trade or profession before the individual arrives at years of discretion., This choice is often made at too early an age to enable any one to determine whether or not the individual possesses great natural talent or great aptitude to that particular calling. But the law which opens every trade and profession to each one of us, is intended for the protection of all.

It would be equally unjust, and contrary of human reason, to require of every physician extraordinary talent and extraordinary natural ability and judgment, as it would to refuse to call the physician to an account who neglected to treat a case with that care men ordinarily bestow in the business of life, and according to the best judgment his Creator has given him. The law does not go to either extreme. The law is intended for the protection of all, both physician and the patient.

The faithful, honest and conscientious physician is called upon to administer to every kind and class of men, the high and low, the rich and the poor, the virtuous and the depraved. Common humanity demands that the sick and distressed should be administered to, whatever may be their circumstances. The physician is obliged by his calling, constantly to enter the abodes of others, and frequently to undertake difficult cases and to perform critical operations in the presence of those who are ignorant and credulous.

He is liable to have his acts misjudged, his motives suspected and the truth colored or distorted even where there are no dishonest intentions on the part of his accusers. And from the very nature of his duty, he is constantly liable to be called upon to perform the most critical operations in the presence of persons united in interest and sympathy by the ties of family, where he may be the only witness in his own behalf.

It is the intention of the law to protect the physician or surgeon as well as the patient, and to protect the patient as well as the physician or surgeon. If the surgeon is grossly ignorant of his profession, or knowing his duty, grossly neglects it, he should be held to the full rigor of the law and should suffer the full consequences of imposing himself upon a confiding public. His trust and responsibilities are of the highest and gravest character, and he is bound to a faithful discharge of the trust. In case of doubt he is bound to use the best of his judgment, but the surgeon is not responsible for an error of judgment when the expediency of the remedy or operation is involved in doubt, if he acts with ordinary care, skill and diligence.

A fracture or dislocation, or both combined, may be so complicated that no human skill can restore it. Or the patient may, by disregarding the surgeon's directions, impair the effect of the best conceived measures. The surgeon does not deal with inanimate or insensate matter like the stone mason or brick layer, who can choose his materials and adjust them according to mathematical lines, but he has a suffering human being to treat, a nervous system to tranquilize, and an excited will to regulate and control; where a surgeon undertakes to treat a fractured limb, he has not only to apply the known facts and theoretical knowledge of his science, but he may have to contend with very many powerful and hidden influences; such as want of vital force, habit of life, hereditary disease, the state of the climate. These or the mental state of his patient may often render the management of a surgical case difficult, doubtful and dangerous; and may have greater influence in the result than all the surgeon may be able to accomplish, even with the best skill and care.

From these and like considerations arise those cases and conditions so frequently alluded to by medical witnesses in the course of this trial, in which the surgeon is called upon to exercise his best judgment, and in which he is justified in changing the mode of treatment from time to time as the nature and exigencies of the case shall indicate a necessity, or the propriety of a change.

This is not, as was ingeniously said in the course of the argument, establishing a rule "that every surgeon must be the judge in his own particular case," but it is applying a necessary and well established rule, that in cases of doubt as to what is the best course to be pursued, it is the duty of the surgeon to exercise his best judgment.

And it follows as a consequence of this duty, that when the skillful and careful surgeon does exercise his best judgment in a case of doubt, he ought not to be and cannot be, held responsible for a failure of success.

The fact that medical cases arise in which the practitioner is compelled to rely on his own judgment, makes such a rule necessary.

If he is qualified to act and is faithful to the great trusts confided to him, he deserves the full protection the rules of law afford him.

On the other hand, if he is grossly ignorant, or fails to use ordinary care in the treatment of the case he has in charge, it is most just that he should suffer the consequence of his acts.

Applying these principles, therefore, to this case, you will inquire:

1st. Did the defendant possess ordinary skill and treat the injury of the plaintiff with reasonable and ordinary diligence and care? If he did, and if in case of doubt he used his best judgment, he is not liable, and your verdict should be for the defendant.

If you believe from the evidence that the defendant did not treat the plaintiff's limb with reasonable and ordinary diligence and skill, and with reasonable and ordinary care, then he is liable for all damages necessarily resulting from such improper treatment.

If you believe from the evidence that whatever injury the plaintiff has sustained has been the result of the severe injury originally received, and not the result of negligent, unskillful or improper treatment, then your verdict should be for the defendant.

Another branch of this case is presented by the pleadings and evidence, namely—an alleged settlement and release or receipt.

Where two parties have mutual unsettled dealings, or are asserting and in good faith making claim to debts or demands, each against the other, and they each execute to the other a release or a receipt in full, the execution of such release or receipt on the part of one is a sufficient consideration to uphold the release or receipt on the part of the other. Surrendering a claim which is asserted in good faith against the other, and which the other is in some risk of having to pay, is a sufficient consideration; and it is not necessary to prove that it could have been successfully prosecuted. In this case, if the parties agreed to a full settlement of all their claims, a release by one was a sufficient consideration for a release by the other.

A written receipt is sometimes open to explanation by parol evidence.

When parties make what they intend for a final settlement, it sometimes happens that an item of account is omitted by both parties by mistake, so that although both parties intended to include their entire dealings, and believed they had done so, yet there is an item that was not in fact settled. It is permissible, notwithstanding the language of the receipts, in a proper case, to show the mistake. But if it is true that both parties thought of the item which is said to be omitted, it was the duty of him who claims that there is a mistake, to have attended to the matter at the time; and if he did not it is his own fault, and he cannot introduce parol evidence to vary the import of the language of the receipt.

Parol evidence is also admissible to show that there was no consideration, or to show that the consideration mentioned in the receipt is not the true one, and that the parties acted upon other or different consideration from that mentioned in the receipt, when that question is material. But in this case if there was any consideration for the receipt it is not material whether it was great or small.

There can be no such thing allowed and considered by you as a condition of the receipt or release, thought of and agreed to at the time, but not expressed in the writing.

That is, the writing must be taken as containing the very

words the parties intend to use to express what was agreed to at the time, and all the conditions of the agreement.

Fraud will not be presumed, but must be established by proof. The burden of proof is on the plaintiff to establish fraud. If it has been proved that the defendant practiced deception upon the plaintiff and by that means obtained the receipt, the receipt is of no value. Such fraudulent practice must be proved by satisfactory evidence. The receipt cannot be avoided on the ground that Dr. Poppleton apprehended danger of an action. He was not bound to state that he feared an action. It would be no fraud or deception for him to remain silent as to his reasons for wanting the receipt. If the jury believe that the receipt was fairly or honestly obtained, and Williams, the plaintiff, suspected, when asked for the receipt, that defendant (Poppleton) feared an action for malpractice, and desired the receipt on that account, that of itself is decisive of the case.

If you find that such was the case, then the transaction at the time of executing the receipts was a full and final settlement of all that is involved in this action.

You are to decide upon every question of fact involved in the case, and upon every question you should be governed by the evidence that has been given on the trial.

The jury returned a verdict of $900 for plaintiff.

After the verdict was rendered in this cause, the defendant filed a motion for a new trial, which, being argued and submitted, was taken under advisement. The following opinion was filed:

UPTON, J. The plaintiff having recovered a verdict for $900, the defendant moved for a *new trial,* assigning insufficiency of the evidence; that the verdict is against law; and errors of law, committed on the trial. Although the verdict was probably the result of compromise of conflicting opinions in the jury room, and the amount is inconsiderable compared with the amount claimed, I think there was some evidence

tending to sustain the finding of this amount.(c)  I am less inclined to review the facts, because both parties voluntarily accepted a juror after he had declared that he had formed an opinion on the merits of the case.  I consider such practice open to criticism; and I think after a party has voluntarily submitted his case upon the chance or probability of such juror's being for him, he should present a very clear case, if he asks relief on the ground of insufficiency of the evidence.

One of the errors of law assigned, refers to the proceedings relating to the written release or receipt.  On the trial the defendant produced in evidence his own receipt in full of all demands, and a receipt of the same date signed by the plaintiff, as follows:

"Received February 25th, 1869, payment in full for Dr. Edgar Poppleton, and settlement is hereby acknowledged, and that said Poppleton has fully paid me all dues and demands that I have against him of whatsoever nature or kind to date, the payment being two hundred dollars:

LYMAN WILLIAMS,"

The court permitted the plaintiff to offer evidence that the defendant had admitted that this cause of action was not mentioned on occasion of executing the receipts.  And the plaintiff being a witness, his counsel asked him to state the circumstances under which the receipt was given, claiming the answer for the purpose of showing, both that the subject matter of this action was not included in the settlement then made, and that the plaintiff was misled by the defendant.  The defendant objected, that a receipt can not be disputed by parol except as to the consideration or amount received; that fraud or mistake should be plead; and that the language of the instrument being clear and explicit, and its construction not doubtful, proof of surrounding circumstances was not admissible to vary or change its meaning.

(c)  The defendant treated the limb during some months, and it was not amputated until after he ceased to treat the case.  Some of the testimony of experts tended to show that amputation should have been resorted to a considerable time before the defendant ceased to treat the case.  If the plaintiff's sufferings were improperly and unnecessarily prolonged, the $900 may have been a reasonable compensation.

The objection was overruled, and the plaintiff testified in substance that the subject of this action had never previously been mentioned between the parties; that the defendant was excited when he came; that he proposed to remit his claim of about $300 for medical attendance, because the plaintiff was poor, leaving it optional with the plaintiff to pay him $100 at some future time, if the plaintiff should become able. The plaintiff said he thought at the time it was probable that the defendant was doing this from fear of being sued for malpractice; but nothing was said on the subject; that the whole matter was done hastily; that it was directly after the verdict in the case of *Williams* v. *East*, in which case the defendant's mode of treating plaintiff's case was first criticised.

On the trial I was not entirely confident of the admissibility of this evidence under the pleadings.

Had the answer specifically alleged, that the plaintiff had for a valuable consideration executed a release of this cause of action, and had the replication merely denied the execution of such a release, making no allegations of fraud or mistake, I should unhesitatingly have ruled out all evidence tending to show misrepresentation, imposition or mistake. But these pleadings, when divested of surplusage, amount to this; the defendant asserts that the parties have made a settlement which includes this alleged cause of action; and the plaintiff denies having settled this subject matter. A receipt or release is produced which does not specifically mention this subject. I am not prepared to say the plaintiff was called upon to reply more specially or specifically than he has. Nor to hold that he is not entitled, under his denials, to show by parol, if he can, that the writing was not intended to include this subject matter, by showing the circumstances under which it was made. And if those circumstances indicate that he was deceived or mistook the nature of the transaction, I think he was authorized to lay them before the jury, to enable them to judge whether he voluntarily assented to a release of the subject matter of this action. The plaintiff undoubtedly had a right to show

the surrounding circumstances, to rebut the conclusion that this claim was included in the release.(d)

And it is difficult, if not impossible, to separate the circumstances that would tend to show that he did not voluntarily assent to release this claim, from those that might show that he was unduly influenced or deceived.

Exceptions were taken by the plaintiff to some of the rulings on the admissibility of testimony; but the only exceptions that are urged upon the argument, are those taken to the rulings which excluded the evidence of other surgeons, as to the reputation of the defendant, and refused to permit them to pronounce upon the question whether the defendant is a skillful surgeon.

Upon more mature consideration, I am satisfied of the correctness of these rulings.

Although in form, the latter question purported to ask witness what he *knew of his own knowledge* of the skill of the defendant, it in reality asked for the opinion of the witness. It virtually puts the witness in the place of the jury, so far as to call upon him to pass upon the facts that have come under his observation, and having drawn from his own observations, conclusions of fact, it asks him to express the opinion which he predicates upon those facts. The witness was certainly permitted to go as far in this direction as the rules of evidence can tolerate. And when, after detailing cases in which he had seen the defendant operate, he was permitted, without objection, to express his opinion as to whether the operations were skillfully performed, I think as much latitude was given as can be permitted in such cases.

The motion for a new trial must be denied.

---

(d) 2 Metc. 283; 5 Gill. 437.