(118 So. 807)

## CARRAWAY v. GRAHAM. (6 Div. 12.)

Supreme Court of Alabama. Nov. 1, 1928.

Rehearing Denied Dec. 6, 1928.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Horace C. Wilkinson, of Birmingham, and John A. Darden, of Goodwater, for appellee.

SAYRE, J. Action by appellee against appellant for malpractice. The allegation of the complaint is that "defendant was a physician and surgeon in Jefferson county, Ala., and as such undertook for hire and reward * * * to treat plaintiff for an injury to his hip he was then suffering with, and plaintiff avers that defendant so negligently conducted himself in or about his treatment of the plaintiff under said undertaking as that," etc. Looking to the evidence in the record it may safely be said that plaintiff's illness had its origin in a blow or kick received by him while engaged in a game of football—plaintiff was a schoolboy—but, indubitably, plaintiff was not taken to defendant to be treated in any exclusive sense for an injury to his hip, nor did defendant undertake specifically to treat plaintiff for an injury to his hip, as the complaint may be construed to intend; but the fact is that plaintiff, after having been treated by the medical faculty at Goodwater, where he lived, by, to wit, Drs. Argo and Wilson, was carried on their advice to defendant's hospital in Birmingham in order that his case might be diagnosed and proper surgical treatment administered, and this fact should be kept in mind when considering the allegation of the complaint, which fails accurately to describe plaintiff's grievance, if any.

The briefs indicate that the action of the trial court on defendant's motion for a new trial is considered by the parties as presenting the most serious question raised on the record. We have accordingly treated it in the first place.

On the trial in the court below the person of plaintiff, appellee, was exhibited to the jury, and, on the submission of the cause for review in this court, the offer to exhibit the plaintiff's person and the several scars left by his treatment was renewed; but the court declined to make the proposed inspection; and now appellee contends that the ruling on the motion for a new trial should not be considered on appeal, for the reason that the court has not before it the whole case as it appeared in the trial court. The contention cannot be allowed. The court has before it all the evidence, in the course of which plaintiff's wounds were time and again carefully described, and it may be assumed that they left commensurate scars. And the fact is that these scars became of importance only in the admeasurement of damages, in the event it should be found that they had been inflicted in the course of negligent treatment at the hands of defendant. It is conceivable, of course, that in some such case there may be scars of such location or extent as to disclose to the lay observer even the fact of malpractice; but we are entirely clear to the conclusion that this cause does not furnish an example of that sort of wrong, and that the proposed exhibition, if permissible in any case on appeal, which may be seriously doubted (Elliott's Appellate Procedure, § 620), would have contributed nothing to an understanding of the question involved by this assignment of error.

There is no requirement of law that

defendant should have been infallible in diagnosis or treatment of plaintiff's trouble. A physician or surgeon undertakes to exercise at least ordinary diligence and skill in the treatment of his patient—such care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice, ordinarily exercise in like cases. Moore v. Smith, 215 Ala. 595, 111 So. 918, and cases cited. He cannot be held, in the absence of express agreement, to have warranted a cure, and, if he exercises reasonable care and skill, is not liable for an error of judgment in diagnosis or treatment, where the proper course is subject to reasonable doubt. Barfield v. Infirmary, 191 Ala. 553, 68 So. 30, Ann. Cas. 1916C, 1097. A showing that an unfortunate result has followed does not shift the burden of proof. The complaining patient must still show negligence in diagnosis or treatment. Moore v. Smith, supra. Keeping in mind the foregoing rules of liability—rules well established in this and other jurisdictions—we proceed to a statement of our consideration of the case presented by the record.

Plaintiff had been hurt in a game of football, had received a kick on or in the neighborhood of the left hip, but continued at school for two days, though suffering some pain—this, it seems plain enough, because his father had forbidden him to play the game. The physicians at Goodwater treated him for a week, and then, being both of opinion that the abdomen would need to be opened, took him to defendant's hospital at Birmingham. At that time he was suffering intensely. His pulse and temperature were dangerously high. He was critically ill. Defendant had plaintiff's blood and urine tested. The latter gave no indication; but blood showed a high count of leucocytes, indicating a general pus infection. Defendant determined to operate at once. Plaintiff finds fault on the ground that no X-ray picture was taken in advance. Defendant thought there was not time for X-rays, and, however that might be, that at that stage the X-ray would show nothing helpful. This was the opinion also of the other surgeons who testified in the cause. Next day X-ray pictures were taken, but they disclosed nothing more than the clips with which plaintiff's wounds had been closed. Defendant, a physician and surgeon of 25 years' experience, took plaintiff's history; examined him "from head to foot" (testimony of defendant, plaintiff, and plaintiff's father); and had the above-mentioned tests made before proceeding to operate. He found no exterior signs of hurt. He made an incision on the left side just above the pubic symphysis, i. e., the lower pubic bones at the anterior point of the abdomen—this for the reason that there he found some tension and the greatest pain. His best judgment was that plaintiff was suffering from an abscess, caused by a ruptured appendix, which had formed at that point. Plaintiff thinks this showed professional incompetence. We are unable to concur in that judgment. The medical and surgical experts, of whom a number were examined, have not so deposed. The medical work, shown to be standard and properly admitted in evidence (Barfield v. Infirmary, supra), speaks of such abscesses on the left side. Defendant found no abscess at the place of incision. He then closed the wound on the left side and proceeded, through a median opening below the navel, to explore the abdominal cavity. He found the appendix and the other tangible organs to be normal. But there was an exudation of a straw-colored fluid from the incisions made, and this indicated inflammation; and he found a hard thickening or swelling of the peritoneal wall of the abdominal cavity just inside of the upper point of the hip bone, towards the rear, about half the size of his hand, which had not yet come to a head, and, to drain that area through the back rather than through the abdominal cavity, he made a third incision for the introduction of another drain under the left kidney. Plaintiff complains of this third incision, and speaks of it as if it had been made into the kidney, but the record does not afford any basis for that notion.

And here we note the fact that several of appellant's assignments of error are predicated on the refusal of the trial court to give specially requested charges to the effect that there was no evidence of certain alleged facts. For example, the court refused to defendant a charge requested in this form:

"The court charges the jury that there is no evidence in this case that defendant cut into either of plaintiff's kidneys."

There was no such evidence, and this charge might have contributed something to the jury's understanding of the issues to be decided. In Alabama Consolidated Co. v. Heald, 171 Ala. 273, 55 So. 184, the court held this language:

"While trial courts may, and in some cases should, give such instructions, it has been repeatedly held by this court that the lower court will not be reversed for refusing such requested charges."

Some of the cases are the following: Jefferson v. State, 110 Ala. 89, 20 So. 434; Montgomery Street Ry. v. Rice, 142 Ala. 674, 38 So. 857; Montgomery Street Ry. v. Smith, 146 Ala. 316, 39 So. 757; Tutwiler v. Burns, 160 Ala. 386, 49 So. 455; New Connellsville Co. v. Kilgore, 162 Ala. 642, 50 So. 205; A. G. S. v. Yount, 165 Ala. 537, 51 So. 737; Birmingham v. Poole, 169 Ala. 177, 52 So. 937. We intend no departure from the established rule of these and other cases; we intend only to suggest that in some cases charges of this sort may serve a useful purpose.

From these operations—no doubt from the

release of the straw-colored fluid, the product of inflammation—plaintiff had some relief, some improvement in pulse and temperature. But five or six days later an obstruction of the bowel developed, and imperatively demanded immediate relief. Defendant, after communicating with plaintiff's father at Goodwater, and getting his approval, made another median incision, avoiding the first median incision, because it showed signs of infection, found the obstruction, and corrected it. At one point a matting of the small intestines was found, and this defendant, with the assistance of Dr. Talley, corrected. Appellee argues for one thing that rough handling of the intestines during the exploratory operation caused this trouble. The evidence is that such condition may follow handling or may result as a product of inflammatory conditions, and, in any event, there is always a chance of such result; but the risk must be taken or the patient left to die. To charge this result to malpractice on the evidence in this record, if it was so charged, was to mulct defendant on a surmise. That, we take it, cannot be permitted. At the end of another week or two—the exact time is in dispute— a swelling appeared above and inside of the left hip bone, which after some days was opened, and three or four ounces of pus drained out, and with it some small slivers of bone, which, evidently, came from the hip bone. Then plaintiff began to recover, and at the time of the trial had regained his previous weight, and had returned to his studies.

We have made this statement of plaintiff's case and defendant's treatment of it from the information contained in the record, not in utmost detail, but sufficiently, in our judgment to disclose the merits of the contention between the parties as they appear to us. We cannot assume or concede that they might in reason have appeared differently to the jury.

Dr. John W. Wilson and the senior Dr. Argo, both of Goodwater, and Drs. Cunningham Wilson, Hogan, Talley, Mason, and the junior Dr. Argo, the latter of whom was connected with defendant's hospital, and assisted at the operations of which plaintiff complains, and defendant himself, all experts in surgery except Dr. John W. Wilson and the senior Dr. Argo, who practiced medicine, but not major surgery, testified in the cause, all for the defendant, except Dr. John W. Wilson. None of them—and this includes Dr. John W. Wilson—testified to any facts or opinions which would authorize the inference by the lay mind that the defendant was incompetent to practice his profession or had negligently diagnosed or treated plaintiff's case. This Dr. Wilson did testify that one of the X-ray pictures in evidence possibly showed a thickening and diseased condition of the left hip bone. A hearsay statement by plaintiff's father was to the same effect; that is,

he quoted one of the surgeons to that effect. But this picture was taken at Sylacauga after plaintiff had returned home, and weeks after the operations of which plaintiff complains. It can hardly be supposed that this information, even though it had been more definite and trustworthy than it was in fact, could have afforded any assistance in diagnosis eight or nine days after plaintiff got hurt in the football game. That plaintiff suffered greatly, and that his wounds left scars, or that plaintiff will always be required to wear a bandage—though that does not appear except as a possible result in the opinion of some of the surgeon witnesses and as an inference from the fact that he wore a bandage at the time of the trial—cannot be charged against defendant, unless he negligently misjudged or treated plaintiff's case. One brief speaks of hernia; but there was no evidence that plaintiff suffered from hernia; there was only the opinion that hernia sometimes results from surgical operations such as plaintiff had undergone. Our decided opinion is that, as in Robinson v. Crotwell, 175 Ala. 197, 210, 57 So. 23, the jury were moved more by plaintiff's suffering and his scars— which were exhibited more than once to the jury—than by a consideration of the law and facts upon which the result should have been made to turn.

■■ In other words, it is clear enough, the jury found defendant to be answerable in damages on their observation of his condition at the trial rather than upon a finding of negligence in the diagnosis or treatment of a case which when it came under his observation involved both extreme difficulty in diagnosis and great danger to the patient. No medical man has imputed negligence to defendant. The burden of proof was on the plaintiff. The doctrine of res ipsa did not apply. Moore v. Smith, supra. Our judgment is that the jury should have been controlled in their finding by the expert testimony rather than the testimony of plaintiff —who, of course knew nothing of the real import of his condition, and certainly nothing of what was done while he slept from an anæsthetic—or that of his father, who stood at the door of the operating room, where there were two surgeons and two attendant nurses, and from that viewpoint undertook to differ from the operating surgeon and his expert assistant as to what was done or the order in which it was done.

■ The court here should proceed with great caution; but it should leave no evident mistake unrighted. "This court has not renounced its duty nor neglected its power"— certainly, it ought not to do so—"to revise the verdicts of juries and the conclusions of trial judges on questions of fact, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach

a clear conclusion that the finding and judgment are wrong." Twinn Tree Lumber Co. v. Day, 181 Ala. 565, 569, 61 So. 914, 915.

It cannot be said that there was no contradiction in the evidence and its tendencies; the question for decision was one for the jury, in the first place, at least. Nevertheless, ultimately and within reasonable limits it is the right and duty of the court to revise the finding of the jury. The case at bar was in a peculiar sense one to be decided on the expert testimony. The great weight of that testimony was with the defendant, and our judgment is that the motion for new trial should have been granted.

There is no necessity for a further consideration of the errors assigned.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

SAYRE, J. We have heretofore said:

"The physicians at Goodwater treated him for a week and then, being both of opinion that the abdomen would need to be opened, took him to defendant's hospital at Birmingham."

Counsel for appellee submits "that there is not a line in this record to the effect that both physicians at Goodwater were of the opinion that the abdomen would need to be opened." We presume it was intended to lay emphasis on "both," or, possibly, the objection is to the mere form of the statement. Reading the record again, we find that Dr. Eugene Argo, who had plaintiff's case in charge at Goodwater until he (plaintiff) was taken to Birmingham, deposed as follows:

"I was called to see Hugh Graham, and he had a pain in his lower abdomen, on the left side. * * * This inflammatory condition was in his lower left bowel, lower left side. Down there in the vicinity of the groin. * * * It was more pronounced in the abdomen than in the hip. * * * We (meaning Dr. Carraway and himself) didn't know at that time"—the time of Dr. Carraway's examination—"that he (plaintiff) had been hurt in a football game. (As to that, however, there was conflict in the evidence.) He denied that. * * * I said that in my judgment the seat of the inflammation was in the lower bowel. That is a part of the abdomen. Dr. Wilson (meaning Dr. Jno. W. Wilson) and myself concluded that the inflammation was on the inside and that it had to be cut open to get to it, and that is why we brought him to a surgeon."

Dr. John W. Wilson, who saw plaintiff on one occasion, having been called just before the trip to Birmingham, deposed among other things:

"We (meaning Dr. Eugene Argo and himself) arrived at the conclusion that it was a surgical case, and that he (plaintiff) should be referred to a surgeon. By saying it was a surgical case,

I mean if we country doctors get stumped we send them off to the town doctors, you know."

In the forepart of his examination by plaintiff's counsel this witness did say:

"The pain that he complained of was in his left side in the region of the hip. He was complaining of pain in his left side exclusively, his hip bone and his thigh on the left side. I could not see any reason for operating on him for appendicitis in the condition he was in, nor for operating on him for kidney trouble or to expose his kidneys. [Record 31.] There was nothing about his condition that indicated to me, as a physician, he should be operated on for appendicitis. [Record 31.]"

The witness further said:

"I have an idea as to what was creating this pus in this boy's system, and it seemed like there was an abscess within the concavity of the hip bone. I mean by that there was an abscess on the inside between the hip bone and the bar (sic), outside the peritoneal cavity. If it had been in the peritoneal cavity it is most likely that he would have been dead in a little while."

This witness also said:

"The pain was about the hip joint and thigh and knee, and it was tender to touch, but more painful than tender, as I remember it, and that indicated to me that there was pus in his system somewhere, and it was my judgment then that the pus was inside of his system. * * * "We (Dr. Eugene Argo and the witness) came to the conclusion that this pus was coming from the inside, and not on the outside. * * * His condition was getting worse, and if it had kept on getting worse he would have died. * * * In my judgment as a physician that Sunday afternoon I came to the conclusion that to get the pus out of this boy's body, or system, we would have to operate, and go inside to find the pus. * * * We failed to locate this pus, and that is why we sent him to Birmingham."

We have quoted the bill of exceptions, and while in the original opinion we did not think it necessary to quote so copiously, we now, after further examination, reiterate our judgment that the physicians at Goodwater were of opinion that the abdomen would need to be opened.

Plaintiff was subjected to the operation of which he complains in order to learn what his trouble was and to remove the cause of that trouble, whatever it might be. The expert medical and surgical opinion was that the operation was indicated, and whether or not defendant erroneously thought plaintiff's appendix was the cause of his condition is of no consequence. Dr. Cunningham Wilson, a surgeon of great experience and distinguished reputation, after hearing a statement of plaintiff's condition when he was carried to defendant's hospital, testified to his opinion that it would be the best judgment of any doctor that there was some inflammatory thing inside; that "to relieve that inflammation you would have to go on the inside to do it.

\* \* \* If the pain was in what you call the lower left bowel, that would be the lower part of the abdomen, and if that was the tenderest spot, that would undoubtedly indicate that was the spot to go to in order to find the trouble." These opinions on the part of Dr. Cunningham Wilson were corroborated by Drs. Hogan, Talley, Mason, J. R. Argo, and the defendant Carraway.

The brief quotes the original opinion as follows:

"He (defendant) found the appendix and other tangible organs to be normal, but there was an exudation of a *straw colored fluid* (italics supplied by plaintiff's attorney) from the incisions made and this indicated inflammation."

The brief then quotes the hospital chart, in the defendant's handwriting, as follows:

"Left rectus incision, abdominal organs examined, nothing abnormal found except quantity of *clear fluid*." (Italics again supplied.)

The brief asserts that "this clear fluid—not straw colored—indicated an absence of any trouble in the abdominal cavity." But the statement of Dr. Moynihan, "Abdominal operations," is that "This œdema (swelling produced by watery fluid. Webster's Internat. Dict.) is a sure indication of the presence of a high degree of inflammation and that pus is present in the part beneath; and it is evidence that the incision is being made in the proper place." Dr. J. R. Argo of Birmingham testified:

"This incision was made in the left side, down to the cavity, and when we opened the abdomen, why there was a straw colored fluid that came out, which indicated that he had some trouble there, which indicated an inflammatory condition."

Dr. Carraway testified to the same effect. Dr. Cunningham Wilson testified:

"In making a left rectus incision, and nothing abnormal is found except a quantity of clear fluid, that would indicate that there was some inflammatory condition inside."

Our mind was not then fixed on the difference between "clear fluid" and "straw colored fluid," if any, and we now prefer to follow the opinion of distinguished medical and surgical authority to the effect that either sort of fluid in any considerable quantity in the abdomen indicates inflammation.

Appellee on this application complains that the original opinion is mistaken in its assertion that plaintiff speaks of the third incision "as if it had been *made* into the kidney." On page 12 of the original brief appellee speaks of "the operation on the kidneys." But this matter is not considered to be of any importance at this time, and was mentioned in the original opinion for the reason that, by questions addressed to Dr. John W. Wilson, appellee seemed to dwell upon the fact that appellee had no disease of the kidneys, thus in effect, though not intentionally, it may be conceded, opening the way to the inference that appellant blundered into an operation for, if not on, the kidneys. The evidence is clear to the effect that the only purpose of the incision into the back was, not to operate on the kidneys, but to provide for drainage from the region of the swelling in the abdominal wall, and this practice had the approval of the expert witnesses who testified on that subject. Evidently appellant sought to avoid any inference of that character by asking the special charge on that subject to which we referred in the original opinion, and it was in that connection that we have heretofore referred to this subject.

Appellee complains that the court has denied relief when, so far as concerns the swelling which developed in or on his side above his hip, he was entitled to compensation for the pain he was caused to endure on that account by reason of appellant's undue delay in opening that swelling so as to allow the escape of pus therein accumulated. For that swelling and the condition of the hip bone, appellee's witness Dr. John W. Wilson acquits appellant of any responsibility. The only complaint we hear as to that is that appellant, after his attention had been repeatedly called to the swelling by one of the nurses—who did not testify—delayed too long to open it. There is no expert or other opinion that appellant waited longer than he ought. Appellee's first operation was on November 30th. The evidence showed—without dispute, as we now recall it—that the only external evidence of the location of appellee's trouble at that time was to be seen in the groin or lower left abdomen. Dr. Carraway's testimony is that he thought—meaning his best recollection, as we understand—that he opened the swelling on January 10th, and that until then he was undecided as to what caused the swelling. This is the evidence bearing upon this point. We feel reasonably sure that appellee, a schoolboy 17 years of age, is not a medical expert. Nor are we. Taking what fair view of this matter we can, we find in it no sufficient ground for the verdict, and the assessment of damages would indicate very strongly that damages were not assessed on this account alone.

Speaking to the case in general, appellee refers to Johnson v. Winston, 68 Neb. 425, 94 N. W. 607, where the commissioner, writing for the court, observed that "we cannot overlook the well-known fact that in actions of this kind [malpractice] it is always difficult to obtain professional testimony at all." We presume the commissioner intended to express the opinion that it is hard to get medical men to testify against their brethren of the profession. We need express no opinion as to that. The fact in the present case is that we find in the testimony of the six surgeons who testified for defendant no reason to doubt their candor or the validity of their

opinions, nor have we any doubt that they correctly understood the facts when testifying in the cause.

There will be no denial by the court that the case was one proper for submission to the jury in the first place. Under the practice in this state, a scintilla of evidence in support of plaintiff's case suffices to take it to the jury, and requires that the judge should refuse the general charge for the defendant, notwithstanding the great weight of the evidence is on the side of the defendant. But it is within the power and duty of the presiding judge in such case to prevent injustice, and this court exercises the same power and is bound by the same duty, making due allowance for the necessary difference in the presentation of causes in this and in the trial courts. This is not to say that the evidence in support of appellee's case was no more than a gleam, a spark, a scintilla, but it is to say that, notwithstanding the trial judge properly refused the general charge, this court will see that justice is done as it is due to be by the triers of fact as well as the judge declaring the law. We have heretofore cited our cases in this line, and that might well suffice to dispose of this appeal. However, we quote from some like cases in other jurisdictions—cases of alleged malpractice. In Champion v. Kieth, 17 Okl. 204, 87 P. 845, the Supreme Court of Oklahoma said:

"In the trial of cases such as the one before us, courts should proceed with great care, as frequently there is liability that prejudice will creep into the minds of the jurors, and oft times a jury is liable to arrive at unwarranted conclusions."

In English v. Free, 205 Pa. 624, 55 A. 777, the court said: "A surgeon is not an insurer of his patients. We think the court below was right in entering a nonsuit"—this, in a case in which the defendant incorrectly diagnosed a dislocation of the femur, the court saying, "this injury is such that it is very difficult to detect its exact character." Such was the case here.

In Kernodle v. Elder, 23 Okl. 743, 102 P. 138, the court quoted from Williams v. Poppleton, 3 Or. 139, as follows:

"A physician is obliged by his calling constantly to * * * undertake difficult cases, and to perform critical operations in the presence of those who are ignorant and credulous. He is liable to have his acts misjudged, his motives suspected, and the truth colored or distorted even where there are no dishonest intentions on the part of his accusers."

In Ewing v. Goode (C. C.) 78 F. 442, Taft, Circuit Judge, quoted with approval from an English case (Hancke v. Hooper, 7 Car. & P. 81) as follows:

"A surgeon is responsible for an injury done to a patient through the want of proper skill in his apprentice; but, in an action against him, the plaintiff must show that the injury was produced by such want of skill, and it is not to be inferred."

And further he wrote:

"A physician is not a warrantor of cures. If the maxim, 'res ipsa loquitur' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' "

In Fausette v. Grim, 193 Mo. App. 585, 186 S. W. 1177, in which defendant operated for appendicitis on a pregnant woman, the court held this language:

"The charge is that defendants negligently advised an operation. In this kind of a case plaintiff must not only prove that the operation was unnecessary but also that the operation was one so palpably unnecessary that a surgeon of ordinary care and skill would not have advised it. If conditions were such as to lead surgeons of ordinary care and skill to think an operation was necessary and defendants, in the honest exercise of their best judgment, thought an operation was proper, then defendants would not be liable even if it turned out afterwards that they were mistaken in their diagnosis"— citing cases.

In Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712, the court said:

"He [the surgeon] is faced by the eccentricities of medical experts. We have no inclination to share in the prevalent and intemperate denunciation of their unreliability and veniality. But if every verdict mulcting a reputable physician in damages must be sustained if any of his professional brethren can be induced to swear that, assuming the testimony of the family and friends of the patient to be true, the physician had made a mistake of judgment or had been guilty of unscientific practice, then the profession would be one [in] which 'unmerciful disaster follows fast and follows faster.' "

Many other cases to the same effect might be cited and quoted. We had thought it unnecessary in the original opinion to do more than cite our own cases of Robinson v. Crotwell, 175 Ala. 197, 57 So. 23, and Moore v. Smith, 215 Ala. 595, 111 So. 918. The courts everywhere have thought it necessary to exercise great care in order to protect honest and capable medical men from being mulcted by the verdict of jurors who know little or nothing of the subject they are required to consider and determine in our system of jurisprudence, at the same time administering the rule of liability declared by this court in cases heretofore decided.

It is the judgment of the court that the rehearing be denied.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.