(132 So. 22)

## CROCKER v. SCOTT.
### 2 Div. 960.

Supreme Court of Alabama.

May 31, 1930.

Rehearing Granted Dec. 4, 1930.

Further Rehearing Denied Jan. 29, 1931.

S. F. Hobbs, of Selma, for appellant.

W. F. Herbert, of Demopolis, and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

SAYRE, J.

Plaintiff's (appellant's) intestate died by accidental means on June 5, 1927. Previous to that time he had, through defendant as agent of an insurance company, applied to the company for a policy of life insurance. The policy sent to defendant by the company was dated June 7, 1927, and had not been delivered at the time of applicant's death. Plaintiff's contention was that his intestate had an agreement with defendant that the policy was to become effective on a date prior to the death of plaintiff's intestate, and that defendant had procured the policy to be dated as of June 7th, without authority and contrary to the agreement, and for this alleged default plaintiff sought to hold defendant responsible in damages. Defendant's testimony denied every material allegation of the complaint, and the court is unable to find in the testimony offered by plaintiff any contradiction as to any material matter. It is therefore the opinion of the court that the general affirmative charge was well given on defendant's request and that the judgment should be affirmed.

It is so ordered.

All the Justices concur except GARDNER and THOMAS, JJ., dissenting.

THOMAS, J. (dissenting).

The complaint declared against the agent of a life insurance company for the amount

which would have been collectible under a policy of life insurance, had it not been misdated without authority of the contracting parties or any one with authority to bind him. The pleadings of defendant were in short by consent.

The general affirmative charge was given at defendant's request; and that action is assigned as error. The giving or refusing of that charge has often been discussed and the authorities need not be collected. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Chestang v. Kirk, 218 Ala. 176, 118 So. 330; Pelzer v. Mutual Warehouse Co., 217 Ala. 630, 117 So. 165; Carraway v. Graham, 218 Ala. 453, 118 So. 807.

Defendant offered in evidence the written application for insurance by plaintiff, in which appears the notation "Date policy" was printed, and "6/7/27 or earlier" written in ink and not in handwriting of the applicant, but rather of the scrivener who filled out said application—that of defendant. We judicially know the term employed meant "June 7, 1927, or earlier." Its date was May 25, 1927. The father of plaintiff testified that nothing was said as to postdating the policy as indicated; and Mr. Alston swore he heard the conversation between the plaintiff and defendant, and that in his best judgment nothing was said about the policy being postdated; that if such statement was made he "did not hear it." He detailed a conversation had with Scott as follows:

"I told Mr. Scott, I didn't know whether or not it was Monday or Tuesday, but it was right after the drowning of the young boy, here in Linden, and he told me 'I just heard that Crocker's son got drowned' and I told him 'Yes sir he was drowned' and he said it was mighty bad and I asked him if he got the policy and that Crocker didn't tell me to inquire about it, but being a friend of the family I was interested and he said he had got the policy and I said I was glad of that. He said he couldn't give it to Mr. Crocker because it took effect on the 7th, and I asked him how come that and he said it was to make it better for the boy to fix it that way, it was nearest his birthday and he couldn't give him the policy on account of that condition.

"Witness was then asked:

"Did he say anything about who fixed it that way?

"Whereupon defendant objected, which objection was by the court overruled, and defendant duly excepted to the ruling of the court.

"The witness answered:

"I don't recall about that whether Scott said he fixed it that way or the boy, but it was fixed on the 7th on the application."

The witness Marvin testified he was present during the conversation between applicant and defendant when the contract was entered into, and that nothing was said about postdating the policy. His statement was in effect:

"Well when we went in there to take it out, he just asked him two or three questions and he wrote that down and he didn't say anything about dating it back or nothing. He didn't say anything about others than the one thousand dollars insurance applied for and he didn't tell him anything about a birthday or anything like that. There was nothing said in that conversation by Mr. Scott about other than the one thousand dollars applied for, and nothing was said by Fred Crocker about another policy. Neither one of them said anything about post-dating the policy or about the postponement about the time it was to take effect. I was there all the time Fred Crocker was there."

On cross-examination the witness testified as follows:

"Witness was handed a paper and stated that he had seen a paper just like it. I wasn't standing right over Mr. Scott looking at him to see what he wrote. I don't know what he wrote in there. I don't remember when I first heard about him dating the policy up or back, I don't remember who it was that told me about it."

The witness Slade testified, among other things, that he and Mr. Alston had conversation with Mr. Scott the day after Fred Crocker was drowned; that:

"Mr. Scott called us in his office and told us that he heard of the boy's death and that he got the policy either Friday or Saturday and was fixing to go down and deliver it, but he heard the boy was drowned and he changed the application to make it nearest his birthday—

"Whereupon defendant objected which objection was by the court overruled and the defendant then and there duly excepted.

"Witness further testified—

" * * * And said had the premium been paid he would have to pay the policy and I asked him the question if he didn't agree to carry it until fall and said he did and I said seems that should have been a cash premium. * * *

"And he said I couldn't see fit to deliver that policy on account of the company on account him changing the date. He said that he did it.

"Q. Scott said that Scott did it? A. Yes sir, he said he did it. Then he had a conversation with Mr. Alston and he said you should go ahead and pay it, * * * as you agreed to carry this until fall and pay it yourself.

"Q. What did Mr. Scott say to that? A. He said it was correct, he did agree to it. * * *

"He called us in there; he called Mr. Alston and me and said he would show us the application blank, which he did. He told us that he changed the application after it was sent in. He didn't say where he changed it. He said changed it either because the date was nearest the middle of the birth or birthday. Said he was doing it for the advantage of the boy."

Under the scintilla rule and reasonable inference to be deduced from the foregoing evidence by plaintiff, a jury question was presented as to what the contract was, and whether or not the contract was changed as to the true and contract date taking effect. A direction of the verdict for defendant was, in my opinion, reversible error.

I therefore respectfully dissent.